# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | |
|---|---|
| SERGIO ESCOBEDO, et al., | § |
| Plaintiffs, | § |
| v. | §    EP-08-CV-137-KC |
| DYNASTY INSULATION, INC., | § |
| Defendant. | § |

## ORDER

On this day, the Court considered "Defendant's Motion to Decertify" ("Motion") (Doc. No. 55). For the reasons set forth herein, Defendant's Motion is **DENIED**.

I.    BACKGROUND

A.    Conditional Class Certification

Defendant Dynasty Insulation, Inc. ("Defendant"), a Texas corporation, installs commercial insulation. Pls.' Original Compl. ("Complaint") (Doc. No. 1) ¶ 4. On April 24, 2008, five insulation installers whom Defendant previously employed – Plaintiffs Sergio Escobedo, José Cibrián, Freddy Torres, Héctor García, and César Torres (collectively "Original Plaintiffs") – filed their Complaint in this Court, alleging that Defendant willfully violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 (2006) ("FLSA"), by failing to pay overtime compensation to Original Plaintiffs as required by § 207(a)(1) of the FLSA. *See* Compl. ¶¶ 1, 5, 7-8. Original Plaintiffs seek compensation for wages allegedly owed and unpaid, as well as liquidated damages and attorney's fees and costs. *Id.* ¶¶ 13-15. In "Defendants' [sic] Original Answer" ("Answer") (Doc. No. 6), filed May 14, 2008, Defendant generally denied that

it violated the FLSA and specifically denied that it willfully violated the FLSA. *See* Answer ¶¶ 10-12.

On August 18, 2008, Original Plaintiffs filed their "Motion to Proceed as a Collective Action, for Notice to Potential Class Members, and for Disclosure of the Names, Information, Addresses and Contact Information of Potential Class Members" ("Motion to Proceed") (Doc. No. 12). In their Motion to Proceed, Original Plaintiffs requested that the Court allow their claim to proceed as a collective action on behalf of all workers performing insulation work for Defendant. *See* Mot. to Proceed 10. The Motion to Proceed included the Declaration of Original Plaintiff César Torres, who stated that Defendant did not pay him overtime when he worked for "a project called the South West Cheese Company" in Clovis, New Mexico; the Declaration of Ralph Armendariz, foreman of the South West Cheese Company project, who stated that he was interested in joining this case because he was not paid overtime and believes that others whom Defendant previously employed would also be interested in joining this case; and two timesheets from the South West Cheese Company project showing that the employees on the project worked substantially identical hours. *See* Decl. of César Torres (Doc. No. 12-2); Decl. of Ralph Armendariz (Doc. No. 12-3); Mot. to Proceed Ex. 3 at 1-2 (timesheets). In its response to the Motion to Proceed, Defendant opposed allowing Original Plaintiffs' case to proceed as a collective action, but argued that, if the Court grants the Motion to Proceed, it should not expand the class beyond employees who worked on the South West Cheese Company project. *See* Def.'s Resp. to Pls.' [Mot. to Proceed] (Doc. No. 14) at 8-9.

On September 19, 2008, this Court granted the Motion to Proceed in part, conditionally certifying a class of plaintiffs pending possible decertification at a later stage of the case. *See* Order, Sept. 19, 2008 (Doc. No. 17) at 4-5 (electing to utilize the collective action procedure

typified by *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)). However, because the Court agreed with Defendant that Original Plaintiffs had not provided any evidence that Defendant's alleged FLSA violation extended further than the South West Cheese Company project, the Court limited the potential class to employees who worked on that project. *Id*. at 6. Additionally, the Court ordered Original Plaintiffs' counsel to draft a Notice to be sent to potential class members, and stated that the Court must approve that Notice before it may be sent. *Id.* at 7. Pursuant to Original Plaintiffs' motion, the Court granted the amended version of Original Plaintiffs' Proposed Notice on February 27, 2009. Between March 24, 2009, and April 22, 2009, ten Plaintiffs (collectively "Opt-In Plaintiffs") filed their consent to opt in to the conditionally certified class. *See* Consents to Opt-In (Doc. Nos. 31-34, 39-44).

B.   **Defendant's Motion**

On June 12, 2009, Defendant filed its Motion. In the Motion, Defendant argues that the Court should decertify the conditionally-certified class because Opt-In Plaintiffs' claims are barred by the applicable statute of limitations. *See* Mot. 3. Defendant includes an affidavit from Rick Armendariz, Defendant's Vice President, stating that the South West Cheese Company project was completed in "late November or early December 2005" and that Defendant did not employ anyone on the project after that date. *See* Aff. of Rick Armendariz (Doc. No. 55-2) at 1. Additionally, Defendant included a pay request, dated December 19, 2005, stating that the project is 100% complete. *See* Mot. Ex. A. Defendant argues that, based on the completion date of the South West Cheese Company project, Opt-In Plaintiffs' claims are barred under both the two-year limitations period for FLSA violations and the three-year limitations period for willful FLSA violations. *See* Mot. 4; 29 U.S.C. § 255(a) (FLSA statute of limitations). However, because Defendant does not specifically indicate the date of the last payday following the last

week for which Opt-In Plaintiffs may have claimed overtime compensation, the date from which the statute of limitations began running remains unclear. *See Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1050 (5th Cir. 1973) ("A separate cause of action for overtime compensation [under § 255(a)] accrues at each regular payday immediately following the work period during which the services were rendered and for which the overtime compensation is claimed.") (quotations omitted).

C. **Plaintiff's Response**

On June 24, 2009, Plaintiffs filed their Response to Defendant's Motion, arguing that Opt-In Plaintiffs are similarly situated to Original Plaintiffs and that decertification is therefore inappropriate. *See* Pls.' Resp. to [Def.'s Mot.] ("Response") (Doc. No. 56) at 2. Plaintiffs include two timesheets showing that each Opt-In Plaintiff worked on the South West Cheese Company project. *See* Resp. Exs. 2-3. Additionally, Plaintiffs provide the Court with Statements from four of Opt-In Plaintiffs – José J. Rubio, Artemio Rodriguez, Felipe Piña, and Abel Romero. *See* Resp. Exs. 3-6. Finally, Plaintiffs include the oral deposition of Mr. Armendariz, taken December 12, 2008. *See* Resp. Ex. 7 ("Armendariz Deposition").[1]

In their Response, Plaintiffs first argue that Defendant's FLSA violation was willful, thus triggering a three-year limitations period. *See* Resp. 3-4. Specifically, Plaintiffs allege that Mr. Armendariz knew about the FLSA's requirements for overtime compensation and "chose to ignore those requirements."[2] *Id.* at 4. In support, Plaintiffs point to portions of the Armendariz Deposition explaining the uniform procedure for processing Defendant's employees' paychecks,

---

[1] The cover page of this deposition states Defendant's Vice President's name as Ricardo Armendariz, Jr. *Id.* at 1.
[2] Incidentally, Mr. Armendariz states that, earlier in his career, he himself was not paid overtime wages but "didn't complain to anybody." Armendariz Dep. 14. When asked why, he responded, "I just – I don't know. I just didn't complain." *Id.* at 14-15.

and argue that Mr. Armendariz knew when those paychecks reflected overtime payments and when they did not.  *See* Resp. 5 (citing, inter alia, Armendariz Dep. 126-127 (explaining that paychecks for Defendant's employees were generated through the QuickBooks software program)).

Next, Plaintiffs argue that the Court should equitably toll the statute of limitations because Opt-In Plaintiffs were excusably unaware of their rights under the FLSA, or, alternatively, that Defendant is equitably estopped from asserting the statute of limitations because Defendant "concealed and misrepresented facts" relevant to Opt-In Plaintiffs' cause of action.  Resp. 6-7.

To establish concealment and misrepresentation, Plaintiffs cite to the four Opt-In Plaintiffs' Statements.  Plaintiff José J. Rubio states that he asked Rick Armendariz about overtime pay and was told that he would not be paid; afterwards, "[Mr. Rubio] did not ask whether [he] had the right to receive extra money" because of fear that would be fired.  Resp. Ex. 3.  Plaintiff Artemio Rodriguez states that he asked the foreman of the South West Cheese Company project, Ralph Armendariz, about overtime pay; that Ralph Armendariz told Mr. Rodriguez that he would talk to Rick Armendariz; and that Ralph Armendariz "never said anything else . . . about this matter."  *Id.* Ex. 4.  Also out of concern that he would be fired, Mr. Rodriguez never raised the issue again.  *Id.*  Additionally, Mr. Rodriguez states that he never saw a posted notice explaining his FLSA rights.  *Id.*  Plaintiff Felipe Piña states that he asked Ralph Armendariz about overtime pay but was fired before receiving an answer; Mr. Piña also states that he never saw a posted notice explaining his FLSA rights.  *Id.* Ex. 5.  Finally, Plaintiff Abel Romero states that he and three other employees – including Plaintiff Artemio Rodriguez – asked the foreman about overtime pay and, like Mr. Rodriguez, was never told anything else about the

matter. *Id.* Ex. 6. Mr. Romero also states that he did not see an FLSA notice posted. *Id.* Plaintiffs argue that Defendant's reaction to Opt-In Plaintiffs' inquiries about their compensation shows that Defendant consistently concealed and misrepresented facts material to Opt-In Plaintiffs' claims. Resp. 8.

Plaintiffs also argue that Rick Armendariz deceived Opt-In Plaintiffs by substituting their overtime compensation with mileage reimbursements. *Id.* In support, Plaintiffs cite to Rick Armendariz's Deposition, where he states that "[t]he only way [he] might do that is if [an employee] didn't give [] his hours on time." Armendariz Dep. 145. When asked whether he has a practice of compensating employees for overtime work with mileage reimbursements, he answered that he "might have done that with some of [the employees] but not with all of them." *Id.* Plaintiffs contend that this practice misled Opt-In Plaintiffs into believing that that they were fully compensated, especially because Plaintiffs are "not sophisticated regarding their statutory rights." *Id.* at 9; *see also* 29 C.F.R. § 778.217(d) ("An employee normally incurs expenses in traveling to and from work, buying lunch, paying rent, and the like. If the employer reimburses him for these normal everyday expenses, the payment is not excluded from the regular rate as 'reimbursement for expenses.'").

Finally, Plaintiffs argue that Defendant's failure to post and keep posted a notice advising employees of their FLSA rights "makes Defendant's statute of limitations argument invalid." Resp. 9 (citing 29 C.F.R. § 516.4 ("Every employer employing any employees subject to the [FLSA's] minimum wage provisions [must] post and keep posted a notice explaining the Act . . . in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy.").

### D. Defendant's Reply

Defendant filed its Reply on July 8, 2009. *See* Def.'s Reply in Support of its Mot. to Decertify ("Reply") (Doc. No. 57). In its Reply, Defendant first reiterates that its statute of limitations argument is appropriately raised in its Motion because it shows that Defendant has different defenses available against Opt-In Plaintiffs than against Original Plaintiffs. Reply 1-2.

Responding to Plaintiffs' equitable tolling argument, Defendant asserts that "[i]t is clear . . . that equitable tolling is inappropriate in this case."[3] *Id.* at 2. First, Defendant reasons that Opt-In Plaintiffs' inquiries about their overtime compensation show that they understood that they have a legal right to overtime compensation. *Id.* at 3. Calling Plaintiffs' assertion that Opt-In Plaintiffs were unaware of their rights an "evidentiary leap," Defendant notes that "[n]owhere in [Opt-In Plaintiffs'] statements do these individuals state that they believed they were not entitled to compensation." *Id.* at 4. Moreover, Defendant argues that Mr. Rubio's and Mr. Rodriguez's stated fear of being fired if they raised the issue of overtime compensation makes it even clearer that they were aware of their rights. *Id.* at 5. Finally, Defendant argues that Plaintiffs' reliance on the "boilerplate paragraphs in the [S]tatements of the [Opt-In Plaintiffs]" to establish that Defendant never posted an FLSA notice is misplaced. *Id.* Defendant believes that the Statements are insufficient because Opt-In Plaintiffs "only state that they never saw the notice. Simply because these individuals never the [sic] saw the notice does not mean that it was never posted." *Id.* However, Defendant conspicuously fails to address whether the notice was in fact posted.

---

[3] Defendant does not specifically respond to Plaintiffs' argument that Defendant is equitably estopped from asserting the statute of limitations. Nevertheless, because Defendant reiterates its statute of limitations argument in its Reply, the Court assumes that Defendant does not agree that it is estopped from asserting it.

## II. DISCUSSION

### A. Standard

> "An action to recover [under the FLSA] may be maintained against [an] employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to [an FLSA action] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."

29 U.S.C. § 216(b).

A § 216(b) collective action is distinct from a FED. R. CIV. P. 23 class action in that it follows an "opt-in" rather than an "opt-out" procedure. *Mooney v. Aramco Servs. Co,* 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), *as stated in Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 311 n.10 (5th Cir. 2004) (citing *La Chapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975)).[4] Under the opt-in procedure, "no person can become a party plaintiff and no person will be bound by or may benefit from the judgment unless he has affirmatively 'opted into' the class; that is, given his written, filed consent." *La Chapelle*, 513 F.2d at 287. By allowing similarly situated plaintiffs to proceed as a class, "[a] collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. [And,] [t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [] activity." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

---

[4] *Mooney* and *La Chapelle*, along with several other cases cited in this Order, involve claims under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 (2006) ("ADEA"). "The ADEA, at [§ 626(b)], explicitly incorporates [§ 216(b)] of the Fair Labor Standards Act . . . ." *Mooney*, 54 F.3d at 1212; *see also LaChapelle*, 513 F.2d at 289 ("Congress . . . directed that [the] ADEA be enforced in accordance with, among others, [§ 216(b)] of the FLSA."). Accordingly, unless stated otherwise, the Court will omit the distinction of whether a cited case interprets § 216(b) in the ADEA or FLSA context.

The FLSA requires that a collective action proceed on behalf of "similarly situated" employees. *See* § 216(b). Under the two-stage *Lusardi* approach, utilized in this case and upheld by the Fifth Circuit in *Mooney*,[5] the court first conditionally certifies an FLSA class at the "notice stage" "using a fairly lenient standard," and "[t]he action proceeds as a representative action throughout discovery." *Mooney*, 54 F.3d at 1213-14. At the second stage – "typically precipitated by a motion for 'decertification'" – "the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial." *Id.* at 1214. Because plaintiffs who are not part of a collective action are not bound by the judgment, upon decertification, "the opt-in plaintiffs are dismissed without prejudice." *Id.*

In making a factual determination on whether a group of plaintiffs are similarly situated, "*Lusardi* and its progeny are remarkable in that they do not set out a definition of 'similarly situated,' but rather they define the requirement by virtue of the factors considered in the 'similarly situated' analysis. In other words, this line of cases, by its nature, does not give a recognizable form to [a] representative class, but lends itself to an *ad hoc* analysis on a case-by-case basis." *Id.* at 1213. In *Mooney*, the Fifth Circuit held that the district court did not abuse its discretion when it decertified a collective action based on the following factors: (1) the similarity or disparity of the "factual, employment, and discharge histories of the individual [p]laintiffs[;]" (2) the similarity or dissimilarity of the defenses available to the employer; and (3) the fairness and procedural efficacy of allowing a collective action to proceed. *See id.* at 1215. These three factors have been adopted by district courts in the Fifth Circuit applying the *Lusardi* approach.

---

[5] The *Mooney* court also described an alternative approach to *Lusardi* – the "spurious class action" approach – but "f[ound] it unnecessary to decide which, if either, of the competing methodologies should be employed . . . ." *Mooney*, 54 F.3d at 1216.

*See, e.g.*, *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 574 (E.D. La. 2008); *Proctor v. Allsup's Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008); *Reyes v. Tex. EZPawn, L.P.*, No V-03-128, 2007 U.S. Dist. LEXIS 1461, at *8 (S.D. Tex. Jan. 8, 2007).[6]

**B. Analysis**

Because Defendant and Plaintiffs present arguments inextricably linked to their positions on the ultimate merits of this case, it is important to set out what this Court is *not* determining at this stage. The Court is not determining whether Defendant willfully violated the FLSA, or whether Defendant violated the FLSA at all. The Court is also not determining whether Defendant displayed an FLSA notice, whether Defendant misled or concealed facts from Plaintiffs, or whether Plaintiffs were aware or should have been aware of their FLSA rights. The only issue before the Court is whether, based on the parties' allegations, Opt-In Plaintiffs and Original Plaintiffs are "similarly situated" such that their claims would proceed as a § 216(b) collective action. Thus, Defendant's statute of limitations argument and Plaintiffs' equitable estoppel and equitable tolling arguments are only relevant insofar as they bear on the factors of the *Lusardi* analysis. For example, the Court will not decide whether Opt-In Plaintiffs are time-barred from filing an FLSA claim, but will decide whether Opt-In Plaintiffs' opt-in date sets Opt-In Plaintiffs apart from Original Plaintiffs in light of the *Lusardi* factors. The Court will analyze those factors in turn.

**1. Factual, employment, and discharge histories**

Original Plaintiffs and Opt-In Plaintiffs were employed by the same Defendant

---

[6] The *Lusardi* court considered an additional factor: "the apparent absence of filings required by the ADEA prior to instituting suit." *Mooney*, 54 F.3d at 1213 n.7 (quoting *Lusardi v. Xerox Corp.*, 118 F.R.D. at 359). Because the FLSA does not have a prior filing requirement, *see* § 216(b), the Court will not consider this factor.

on the same discrete project which had an identifiable end date. Plaintiffs' time sheets further show no obvious dissimilarities in the facts to be considered at trial. Most significantly, Defendant points to no differences in the parties' factual, employment or discharge histories which would weigh against this case proceeding as a collective action. In fact, in responding to Plaintiffs' original Motion to Proceed, Defendant conceded that the class of "[a]ll employees who worked on the South West Cheese [Company] project installing and applying insulation and insulation products [is] . . . consistent with Plaintiffs' evidence . . . ." Def.'s Resp. to Pls.' [Mot. to Proceed] 8. On this basis alone, this factor weighs heavily against decertification.

The Court notes that the evidence proffered by the parties does suggest some factual distinctions among Plaintiffs. For example, Plaintiff Ralph Armendariz was the foreman for the project, and Plaintiff Felipe Piña was fired before completion of the project. However, these differences are not sufficient to warrant decertification. "A court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (quoting *Donogue v. Francis Servs., Inc.*, Civ. A. No. 041-170, 2004 WL 1161366, at *1 (E.D. La. May 24, 2004) (quoting *Whiteworth v. Chiles Offshore Corp.*, Civ. A. No. 92-1504, 1992 WL 235907, at *1 (E.D. La. Sept. 2, 1992)); *see also Distelhorst v. Day & Zimmerman*, 58 F. Supp. 334, 335 (D. Iowa 1944) ("In interpreting [] the meaning of the words 'similarly situated' the courts should not be governed by how much or what degree of similarity there may or may not be but permit such a procedure if there is any similarity."). There is no indication from the record that any differences in Plaintiffs' factual, employment or discharge histories bear on the merits of their claims. And, most importantly, these differences do not track the Original Plaintiff/Opt-In Plaintiff distinction on which Defendant bases its argument.

### 2. Defendses Available

The FLSA allows an employee to commence and action within two years after a cause of action accrues and within three years if the cause of action arises from a willful violation. 29 U.S.C. § 255(a). "[I]n an FLSA collective action, the statute of limitations for a named plaintiff runs from the date that the plaintiff files the complaint, while the limitations period for an opt-in plaintiff runs from the opt-in date." *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916-17 (5th Cir. 2008) (citing *Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1130 n.5 (5th Cir. 1983)). Defendant alleges, and Plaintiffs do not dispute, that Plaintiffs' cause of action accrued upon completion of the Southwest Cheese Company project in "November/December 2008." Mot. 4. Neither party has provided the Court with evidence as to the precise date when Plaintiffs' cause of action accrued. Therefore, solely for the purposes of considering Defendant's Motion, the Court will assume that the cause of action accrued on December 19, 2005, the date of Defendant's pay request noting the project's completion. *See* Mot. Ex. A. Assuming Plaintiffs' cause of action accrued on December 19, 2005, Original Plaintiffs' Complaint, filed April 24, 2008, was within the three-year period for willful violations but outside the two-year period for non-willful violations, while Opt-In Plaintiffs' opt-in dates, ranging from March 24, 2009, to April 22, 2009, were all outside both the two-year and three-year period. On this basis, Defendant argues that the two groups are not similarly situated because Defendant has a statute of limitations defense available only against Opt-In Plaintiffs. Defendant's argument is incorrect for several reasons.

First, Defendant's contention in its Motion that "decertification of the conditional class is proper" because "Opt-In Plaintiffs are barred by the statute of limitations" is itself incomplete and potentially misleading. *See* Mot. 1. What Defendant neglects to mention is that it has

previously stated that Original Plaintiffs are *also* barred by the statute of limitations. In its Answer, Defendant generally "denie[d] [that] it failed to comply with the terms of the Fair Labor Standard Act[.]" Answer ¶ 11. Then, it specifically denied the allegation in Plaintiffs' Complaint that it willfully violated the FLSA. *See id.* ¶ 12 ("Defendant denies the allegations in Paragraph 12 of the Complaint"); Compl. ¶ 12 ("Defendant willfully violated the Fair Labor Standard Act . . . ."). If Defendant's position is that it did not willfully violate the FLSA, then the applicable statute of limitations is two years, no Plaintiff has timely initiated their cause of action, and Defendant's statute of limitations defense would be available against all Plaintiffs. Similarly, if Original Plaintiffs and Opt-In Plaintiffs all filed outside the two-year statute of limitations that Defendant believes is applicable, Opt-In Plaintiffs' equitable tolling and equitable estoppel argument would be equally available to Original Plaintiffs as well. Thus, if Defendant intends to show that it did not willfully violate the FLSA, this showing would be more efficiently made in a collective action.

The only condition under which Defendant would have disparate defenses available as to the two groups is if Original Plaintiffs' claims were timely but Opt-In Plaintiffs' claims were not. Because Original Plaintiffs' claims would only be timely if Defendant willfully violated the FLSA, that condition could only arise if Original Plaintiffs establish the necessary predicate facts to show a willful violation. Under those circumstances, Defendant's statute of limitations defense and the issues of equitable tolling and equitable estoppel would be unique to Opt-In Plaintiffs. Even then, however, the underlying issues with respect to the two groups of Plaintiffs would largely overlap and Defendant's available defenses would be similar even if not identical.

To establish that Defendant willfully violated the FLSA, Original Plaintiffs would

have to show that Defendant "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (citing standard adopted in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985)). In their Response, Plaintiffs state that Defendant's violation was willful because Rick Armendariz was aware that overtime compensation was required by the FLSA and intentionally failed to pay overtime compensation. *See* Resp. 3-6. This allegation, necessary to establish timely filing by Original Plaintiffs, nevertheless involves facts which are equally applicable to Opt-In Plaintiffs' equitable tolling and equitable estoppel arguments.

"The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (quoting *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998)). Under equitable tolling, the statute of limitations is suspended "when, despite all due diligence, a plaintiff is unable to discover essential information bearing on the existence of his claim." *Pacheco v. Rice*, 966 F.2d 904, 906-07 (5th Cir. 1992) (citations omitted). It is especially applicable when "the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Patterson*, 211 F.3d at 930-31 (quoting *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999)) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)). Under the related doctrine of equitable estoppel, "an employer is estopped from asserting the filing period if the employer misrepresented or concealed 'facts necessary to support [the applicable claim].'" *Rhodes*, 927 F.2d at 878-79 (quoting *Pruet Prod. Co. v. Ayles*, 784 F.2d 1275, 1280 (5th Cir. 1986)).[7]

---

[7] While equitable tolling and equitable estoppel may both involve concealment by the employer, "[e]quitable tolling focuses on the employee's ignorance, [and] not on any possible misconduct by the employer." *Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876, 878 (5th Cir. 1991).

These three issues – whether Defendant acted willfully as to Original Plaintiffs, whether Defendant misrepresented or concealed facts necessary to support Opt-In Plaintiffs' claims, and whether Opt-In Plaintiffs were prevented from asserting their rights – are logically intertwined. For example, Plaintiffs' allegation that Defendant did not respond to several Opt-In Plaintiffs' questions about overtime compensation is relevant to whether Defendant was aware of its overtime obligations (willful violation), to whether Defendant concealed information necessary for Plaintiffs to be aware of their claim (equitable estoppel), and to whether Plaintiffs' queries demonstrate that Plaintiffs were in fact aware of the existence of their claim (equitable tolling). Thus, even in the single circumstance under which Defendant's statute of limitations defense applies to Opt-In Plaintiffs but not to Original Plaintiffs, the common issues invoked by the parties would nevertheless predominate.

Finally, even if the Court were to assume that Defendant's available defenses as to Opt-In Plaintiffs are entirely different than those available as to Original Plaintiffs, this would not be sufficient to decertify because Plaintiffs' substantive allegations pertain equally to both groups. In *In re Monumental Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004), a class of plaintiffs alleged that the defendant engaged in a "common scheme of fraudulent concealment," but the district court denied class certification because "individualized hearings [were] necessary to determine expiration of the statute of limitations for particular sets of [insurance] policies." *In re Monumental Life Ins.*, 365 F.3d at 420-21. The Fifth Circuit held that this was insufficient to preclude class certification in light of the "efficiency aims of Rule 23."[8] "Though individual class members whose claims are shown to fall outside the relevant statute of limitations are barred from recovery, this does not establish that individual issues predominate, particularly in

---

[8] Those efficiency aims are also applicable to § 216(b) collective actions. *See Sperling*, 493 U.S. at 170.

the face of defendants' common scheme of fraudulent concealment." *Id.* at 421; *see also Norflet v. John Hancock Life Ins. Co.*, No. 3:04cv1099 (JBA), 2007 WL 2668936, at *10 (D. Conn. 2007) ("The mere prospect of the fact-finder having to eventually consider fraudulent concealment questions hardly dooms class certification out of concern for manageability."); *East Maine Baptist Church v. Union Planters Bank, N.A.*, 244 F.R.D. 538, 549 (E.D. Mo. 2007) ("The Court holds that potentially divergent questions of equitable tolling do not negate commonality and predominance in this action."); *Dekro v. Stern Bros. & Co.*, 540 F. Supp. 406, 416 (W.D. Mo. 1982) ("Assuming arguendo that individual limitations questions are present, they do not rise to a level requiring decertification. . . . [s]ince questions of due diligence and fraudulent concealment also bear on the substance of plaintiffs' claims, this court is reluctant to pass on the merits of those claims in the guise of a motion for decertification."). As in *In re Monumental*, the disparate defenses available to Defendant at most go to the issue of recovery while Defendant's alleged FLSA violations pertain to a practice applicable to all Plaintiffs. Accordingly, this factor also strongly weighs against decertification.

### 3. Fairness and procedural efficacy

In its Motion, Defendant has not stated how it believes that proceeding as a collective action would place it in an unfair position, and the Court can infer no unfairness on Defendant's behalf. Based on the evidence submitted to the Court, it appears that insofar as their job requirements are concerned, Plaintiffs' jobs were nearly identical. In other words, whether Defendant violated the FLSA does not appear to depend on the identity of any particular plaintiff. By contrast, the court in *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567 (E.D. La. 2008), granted a motion for decertification when it found that a collective action would require the employer "to pick the class apart, plaintiff by plaintiff, going into the day-to-day job duties of each of the plaintiffs . . . . [an] exercise [that] is tantamount to conducting multiple individual

trials on the merits and is the antithesis of a collective action." *Johnson*, 561 F. Supp. 2d at 586. No such intra-class distinctions are foreseeable here.

By contrast, allowing Plaintiffs to proceed as a class is eminently fair and consistent with the goals of the FLSA. The FLSA's written-consent requirement for collective actions was added in 1947 "for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions. . . . [However,] Congress left intact the 'similarly situated' language providing for collective actions . . . . The broad remedial goal of the statute should be enforced to the full extent of its terms." *Sperling*, 493 U.S. at 488 (citations omitted). That broad remedial goal is to ensure "maintenance of the minimum standard of living necessary for health and general well-being; and to prevent the use of interstate commerce . . . as a means of spreading and perpetuating [] substandard labor conditions among the workers of the several states." *United States v. Darby*, 312 U.S. 100, 109-110 (1941). If Defendant did indeed fail to pay overtime to the entire staff of its South West Cheese Company project, then Defendant retained income which belong to its former employees. Such failure is best remedied by allowing Plaintiffs – some of whom may not have the resources or the sophistication to commence an action individually – to vindicate their rights as a group. "[T]he very apparent remedial purpose of [the FLSA] is too often overlooked where an employer has actually profited from his failure to comply with the law, and where his persistence in such failure, still to his profit, extends beyond the time when by all reason his doubts or uncertainties as to coverage should have vanished." *Mitchell v. Ballenger Paving Co.*, 299 F.2d 297, 301 (5th Cir. 1962). And, even if Opt-In Plaintiffs' opt-in date were to eventually affect their right to recovery, Defendant should not have the benefit of a smaller class because of what is, at this point, merely a possibility.

Procedurally, the Court sees little benefit in decertification based on Opt-In Plaintiffs' opt-in dates. Prohibiting Opt-In Plaintiffs from joining Original Plaintiffs would do no more

than possibly relieve Defendant from litigating the issue of equitable estoppel and equitable tolling in this particular case. It would not make Opt-In Plaintiffs or their arguments go away. If Defendant's Motion was granted, Opt-In Plaintiffs would be dismissed without prejudice. *See Mooney*, 54 F.3d at 1214. They would then be free to re-file their claims – perhaps individually, perhaps as a separate class – and would further be free to re-raise their equitable estoppel and equitable tolling arguments. In that case, the Court would face the possibility of several lawsuits relating to a single Defendant's overtime compensation policies during a single construction project. To state the obvious, the Court does not find this to be efficient, and this factor also strongly weighs against decertification.

### III. CONCLUSION

The Court finds that Plaintiffs are similarly situated because their employment history is nearly identical, because the mere possibility of slightly varying defenses available to Defendant would only go to the issue of recovery, and because fairness and efficiency considerations strongly weigh in favor of allowing Plaintiffs to proceed as a class. Accordingly, for the reasons set forth above, "Defendant's Motion to Decertify" (Doc. No. 55) is DENIED. This action may continue to proceed as a collective action on behalf of Original Plaintiffs and Opt-In Plaintiffs.

SO ORDERED.

SIGNED on this 31st_ day of July, 2009.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE