**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **SERGIO ESCOBEDO, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **EP-08-CV-137-KC** |
| | § | |
| **DYNASTY INSULATION, INC.,** | § | |
| | § | |
| **Defendant**. | § | |

**<u>ORDER</u>**

On this day, the Court considered Sergio Escobedo, et al.'s ("Plaintiffs") and Defendant

Dynasty Insulation, Inc.'s ("Dynasty") respective cross-motions for partial summary judgment.

Pls.' Mot. for Partial Summ. J. ("Pls.' Mot.") (Doc. No. 64); Def.'s Mot. for Partial Summ. J.

("Def.'s Mot.") (Doc. No. 65).  In ruling upon these motions, the Court also considered

Dynasty's Motion to Strike Plaintiffs' Summary Judgment Evidence ("Motion to Strike") (Doc.

No. 67).  For reasons discussed below, Dynasty's Motion to Strike is **DENIED**.  Plaintiffs'

Motion is **DENIED**.  Dynasty's Motion is **GRANTED** in part and **DENIED** in part.

I.      **BACKGROUND**

Plaintiffs are former employees of Dynasty who were hired to perform insulation work

for the Southwest Cheese Company, L.L.C., located in Clovis, New Mexico ("Southwest Cheese

Project").  Pls.' Mot. to Proceed as a Collective Action, for Notice to Potential Class Members,

and for Disclosure of the Names, Information, Addresses and Contact Information of Potential

Class Members ("Motion to Proceed") (Doc. No. 12).  Dynasty is a Texas corporation that

manufactures and installs commercial insulation.  Pls.' Original Compl. ¶ 4 ("Compl.") (Doc.

No. 1); Def.'s Mot. to Strike Pls.' Summ. J. Evidence and Resp. to Pls.' Mot. for Partial Summ. J. ("Def.'s Resp.") (Doc. No. 67).  According to Dynasty, Plaintiffs were employed by it sometime between the commencement of the Southwest Cheese Project in November 2004, through its alleged completion in December 2005.  Def.'s Resp. 5.  Dynasty claims that the last paychecks for insulation work performed on the Southwest Cheese Project were issued no later than January 2006.  *Id.* 5.  Plaintiffs, however, allege that work on the project was still being performed as late as March 19, 2006, and that it is possible that work continued after that date. Pls.' Resp. to Def.'s Mot. to Strike Pls.' Summ. J. Evidence and Reply to Def.'s Resp. to Pls.' Mot. for Partial Summ J. 5 ("Pls.' Reply") (Doc. No. 71).

On April 24, 2008, five of Dynasty's former employees:  Sergio Escobedo ("Escobedo"), José Cibrián ("Cibrián"), Freddy Torres, Héctor García ("García"), and César Torres (collectively, "Original Plaintiffs") filed a Complaint in this Court, alleging that Dynasty failed to pay them overtime wages for work performed in excess of forty hours, as required by the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et. seq.* ("FLSA").  *See generally* Compl.  On August 18, 2009, Original Plaintiffs filed a motion to certify the class, pursuant to 29 U.S.C. § 216(b).  *See generally* Mot. to Proceed.  Thereafter, the Court issued an Order, conditionally certifying

> [a]ll individuals who worked for Defendant Dynasty Insulation, Inc., who fabricated insulation materials or performed insulation or insulating work on the South West Cheese Company project, and who are or were eligible for overtime and were not paid overtime wages, pursuant to the FLSA, 29 U.S.C. § 207.

Order, Sept. 19, 2008, 6 ("September 2008 Order") (Doc. No. 17).

Following the Court's September 2008 Order, ten additional former employees of Dynasty:  José Magallanes ("Magallanes"), Ramón Hernández ("Hernández"), Artemio Rodríguez ("Rodríguez"), Manuel Hernández-Carrasco ("Hernández-Carrasco"), José J. Rubio

("Rubio"), Abel G. Romero ("Romero"), Antonio Gabaldón ("Gabaldón"), Felipe Piña ("Piña"),

Ralph Armendáriz and Hiram Hinojosa ("Hinojosa") (collectively, "Opt-in Plaintiffs") opted-in

to the instant lawsuit.  Consent to Opt-in by Magallanes (Doc. No. 31); Consent to Opt-in by

Hernández (Doc. No. 32); Consent to Opt-in by Rodríguez (Doc. No. 33); Consent to Opt-in by

Hernández-Carrasco (Doc. No. 34); Consent to Opt-in by Rubio (Doc. No. 39); Consent to

Opt-in by Romero (Doc. No. 40); Consent to Opt-in by Gabaldón (Doc. No. 41); Consent to

Opt-in by Piña (Doc. No. 42); Consent to Opt-in by Ralph Armendáriz (Doc. No. 43); Consent to

Opt-in by Hinojosa (Doc. No. 44).  Magallanes, Hernández and Rodríguez filed their consents to

opt-in on March 24, 2009.  Hernández-Carrasco filed his consent to opt-in on March 26, 2009.

The remaining six Opt-in Plaintiffs filed their consents to opt-in on April 22, 2009.

Dynasty subsequently challenged the class's certification on the ground that Opt-in

Plaintiffs' claims were time-barred, and it submitted a motion to decertify the class.  Def's Mot.

to Decertify 2 ("Mot. to Decertify") (Doc. No. 55).  The Court denied the Motion to Decertify,

addressing Dynasty's statute of limitations argument only insofar as the argument affected the

Court's analysis of whether Original Plaintiffs and Opt-in Plaintiffs were "similarly situated" for

purposes of certification under 29 U.S.C. § 216(b).  Order, Jul. 31, 2009, 10 ("July 2009 Order")

(Doc. No. 61).

As noted above, the parties have filed cross-motions for partial summary judgment.  Pls.'

Mot.; Def.'s Mot.  Plaintiffs filed their motion on August 21, 2009.  Pls.' Mot.  Dynasty filed its

Response on September 4, 2009.  Def.'s Resp.  The certified class filed a reply on September 18,

2009.  Pls.' Reply.

The same day that Plaintiffs filed their Motion for Partial Summary Judgment, August 21,

2009, Dynasty filed a cross-motion for partial summary judgment. Def.'s Mot. Dynasty also

filed a motion to strike Plaintiffs' summary judgment evidence on the ground that it violated

Rule 56(e) of the Federal Rules of Civil Procedure. Def.'s Resp. The certified class filed its

Response to Dynasty's Motion for Partial Summary Judgment on September 3, 2009. Pls.' Resp.

to Def.'s Mot. for Partial Summ. J. ("Pls.' Resp.") (Doc. No. 66). Dynasty filed its Reply on

September 18, 2009. Def.'s Reply in Support of Its Mot. for Partial Summ. J. ("Def.'s Reply")

(Doc. No. 72).

## II.    DISCUSSION

### A.    Standard

Summary judgment is required "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.

R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Warfield v. Byron*, 436 F.3d

551, 557 (5th Cir. 2006). The substantive law identifies which facts are material. *See Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187,

189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248;

*Ellison*, 85 F.3d at 189.

"[The] party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of [the

record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*,

477 U.S. at 323; *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). If the

moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  The nonmovant's burden may not be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Warfield*, 436 F.3d at 557 (quoting *Freeman v. Texas Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004)).  Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

> ### B.    Dynasty's Motion to Strike Plaintiffs' Summary Judgment Evidence

As an initial matter, Dynasty challenges Plaintiffs' summary judgment evidence; namely, the Declarations of Ralph Armendáriz and Rubio.  Def.'s Resp. 3-4 (citing Pls.' Resp. Ex. 1 ("Rubio Decl."); Pls.' Mot. Ex. 1 ("Ralph Armendáriz Decl.")).  Without these declarations, Dynasty claims that Plaintiffs have failed to meet their burden of proof.  *Id.*

Dynasty argues that the Declaration of Ralph Armendáriz is inadmissible because 1) Ralph Armendáriz lacks the personal knowledge required by Rule 56(e); and 2) the Declaration is inadmissible hearsay.  *Id.* (citing Ralph Armendáriz Decl.").  Dynasty also challenges the Rubio Declaration as inadmissible hearsay.  *Id.* (citing Rubio Decl.").  Without the Declaration of Ralph Armendáriz, Dynasty argues, Plaintiffs have failed to establish that any Plaintiff was unlawfully denied overtime wages.  *Id.* at 6.

In its Response to Dynasty's Motion to Strike, Plaintiffs argue that, as Plaintiffs' direct

supervisor, Ralph Armendáriz had personal knowledge of their claims.  Pls.' Reply 2.  Further,

Plaintiffs contend that Dynasty's hearsay objection is inapplicable because Ralph Armendáriz's

Declaration "reflect[s] a reasonable inference gleaned from a review of the timesheets that he

submitted for Mr. Torres and the corresponding paychecks Mr. Torres received as compensation

for those workweeks."  *Id.* at 2.  In addition, Plaintiffs argue that the statements made to Ralph

Armendáriz and Rubio by Vice President and owner of Dynasty, Ricardo Armendáriz, qualify as

admissions by a party-opponent and are thus excluded from the rubric of hearsay testimony.  *Id.*

An affidavit "must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant is competent to testify on the matters stated."

FED. R. CIV. P. 56(e).[1]  Ralph Armendáriz states that his Declaration is based upon his personal

knowledge.  Ralph Armendáriz Decl. ¶ 1.  He further states that he "recorded and sent the

timesheets that contained employees' overtime hours for work they performed at the Southwest

---

[1]      Rule 56(e) applies to both affidavits and unsworn declarations.  *See* 28
U.S.C. § 1746.

> Wherever, under any law of the United States or under any
> rule, regulation, order, or requirement made pursuant to law,
> any matter is required or permitted to be supported, evidenced,
> established, or proved by the sworn declaration, verification,
> certificate, statement, oath, or affidavit, in writing of the
> person making the same (other than a deposition, or an oath of
> office, or an oath required to be taken before a specified
> official other than a notary public), such matter may, with like
> force and effect, be supported, evidenced, established, or
> proved by the unsworn declaration, certificate, verification, or
> statement, in writing of such person which is subscribed by
> him, as true under penalty of perjury, and dated, in
> substantially the following form:  (1) If executed without the
> United States: "I declare (or certify, verify, or state) under
> penalty of perjury under the laws of the United States of
> America that the foregoing is true and correct. Executed on
> (date).  (Signature).

*Id.*
The Declarations of Ralph Armendáriz and Rubio both adopt this alternate form.

Cheese project." *Id.* ¶ 2.  Notably missing from his Declaration, however, is how these overtime hours were calculated.  Although Ralph Armendáriz states that he was "in charge of recording employees' work hours," he fails to state whether these records were based upon his own personal observations of the hours that Dynasty's employees worked or from another source, such as the employees' own records.  *See id.* ¶ 1.

However, the relevant evidence contained in Ralph Armendáriz's Declaration is that, according to the time sheets he prepared, the number of hours for which César Torres was paid was less than the number of hours César Torres reported working, and César Torres was not paid for any reported hours in excess of forty hours per week.  *Id.* ¶¶ 5-6.  Whether Ralph Armendáriz had personal knowledge of the actual number of hours that employees worked is irrelevant because his Declaration serves as evidence that Ricardo Armendáriz had notice that Dynasty's employees were reporting that they worked hours in excess of forty hours per week.  *See United States v. Chavis*, 772 F.2d 100, 105 (5th Cir. 1985) (noting that proof of notice serves a legitimate evidentiary purpose).  Because Ralph Armendáriz had personal knowledge of the number of work hours that were *reported* to Dynasty for César Torres, Dynasty's Rule 56(e) objection is inapplicable.

Further, Ralph Armendáriz's Declaration may also qualify as a business record affidavit. *See* FED. R. EVID. 902(11); *see also Fed. Sav. & Loan Ins. Corp. v. Griffin*, 935 F.2d 691, 702 (5th Cir. 1991).  As such, Ralph Armendáriz need only have "personal knowledge to testify as custodian of documents" and "personal knowledge as to some of the statements in the affidavit." *Id.*; *see also Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).  Ralph Armendáriz's Declaration states that he is the "employee in charge of recording

employees' work hours at the Southwest Cheese project," giving him personal knowledge to testify as the custodian of Plaintiffs' time sheets.  Ralph Armendáriz Decl. ¶ 1.  Further, he had personal knowledge of the amounts that he was paid by Dynasty.  *See id.* ¶ 3.  Thus, he has personal knowledge to testify and personal knowledge as to at least some of the statements in the affidavit.  As "[p]ersonal knowledge of all contents of a business record affidavit is not required," Dynasty's personal knowledge objection is without merit.  *See Texas A&M Research Found.*, 338 F.3d at 402.

Dynasty's hearsay objection to the Declaration of Ralph Armendáriz is similarly unavailing.  *See* Def.'s Mot. 3.  Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  FED. R. EVID. 801(c).  Dynasty wishes to strike the Declaration of Ralph Armendáriz, which states that Ricardo Armendáriz told him that he was going to open a bank account to deposit the overtime wages of his employees.  Def.'s Mot. 3 (citing Ralph Armendáriz Decl. ¶ 6).  However, the evidentiary purpose of this portion of the Declaration is not "to prove the truth of the matter asserted" therein.  *See* FED. R. EVID. 801(c).  Plaintiffs do not allege that Ricardo Armendáriz placed their overtime wages into a bank account for their benefit.  To the contrary, Plaintiffs allege that Ricardo Armendáriz did no such thing.  According to Plaintiffs, he simply claimed that he would put said overtime wages into a bank account for his employees in order to stave off Plaintiffs' requests for compensation and to prevent them from filing timely wage claims.  *See* Pls.' Resp. 3.  Because the Declaration is not being admitted for its truth, Dynasty's hearsay objection is also inapplicable.

Ralph Armendáriz's statement is also being offered to show the effect that employees'

-8-

requests for overtime pay had on Ricardo Armendáriz.  As noted above, it serves the non-hearsay purpose of demonstrating that Ricardo Armendáriz had notice that Plaintiffs were complaining about their lack of overtime compensation and that they were reporting work performed in excess of forty hours per week.  *See Chavis*, 772 F.2d at 105; *see also United States v. Cruz-Diaz*, 550 F.3d 169, 176 (1st Cir. 2008) ("Out-of-court statements offered not to prove the truth of the matter asserted but merely to show context – such as a statement offered for the limited purpose of showing what effect the statement had on the listener – are not hearsay.").  Because Ralph Armendáriz's Declaration appears to be based on his personal knowledge and is not hearsay evidence, it may be considered by the Court for purposes of evaluating the parties' respective motions for partial summary judgment.

Even if Ralph Armendariz's Declaration were hearsay evidence, the evidence appears to be admissible as a business record affidavit, an exception to the rule against hearsay.  FED. R. EVID. 902(11); *Texas A&M Research Found.*, 338 F.3d at 402; *Griffin*, 935 F.2d at 702 (finding that hearsay statements contained in the business record affidavit were excepted from hearsay under the business records exception).  It demonstrates Ralph Armendariz's personal knowledge to testify as the custodian of employees' time sheets, and his statements are "supported by [the] business records attached to the affidavit."  *Griffin*, 935 F.2d at 702

Dynasty also challenges Rubio's Declaration as inadmissible hearsay.  Mot. to Strike 3-4 (citing Rubio Decl.).  In his Declaration, Rubio states that "Ric[ardo] Armendariz told me that he was not going to pay me for hours over 40 hours because he did not pay time and a half."  Rubio Decl. ¶ 4.  He further states that "the Dynasty person in charge of the Pecos project . . . . told me not to  be talking to Ric[ardo] Armendariz and if I didn't like the conditions in Pecos, that I

should go to work in the Southwest Cheese project." *Id.* ¶ 5.  However, neither statement is being admitted into evidence for its truth.  Plaintiffs' own evidence refutes the truth of the assertion that Ricardo Armendáriz does not pay time and a half.  Ralph Armendáriz Decl. ¶ 4 ("Some weeks Rick Armendariz would pay me correctly . . . .").  Rather, it is being admitted to show the effect it had on the listener; namely, as evidence why Rubio did not diligently pursue his wage claim.  *See United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009) ("A statement offered as evidence of the bare fact that it was said, rather than for its truth, is not hearsay."); *United States v. Lambinus*, 747 F.2d 592, 597 (10th Cir. 1984) (same).  Because both Declarations serve proper, non-hearsay uses, Dynasty's Motion to Strike is **DENIED**.

### C.    Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs allege that Dynasty willfully failed to compensate them for work performed in excess of forty hours per week, and they request summary judgment on this issues of liability and willfulness.  Pls.' Mot. 14-15.  Plaintiffs contend that there are no genuine issues of material fact with regard to whether Dynasty owes them overtime wages and that the only remaining issue is a determination of the amount of damages they are owed.  *Id.*  Although Plaintiffs do not possess all of the relevant time sheets supporting their respective claims, they allege that Dynasty bears the burden of producing the missing time sheets and that Plaintiffs should not be penalized for Dynasty's failure to meet its burden in this regard.  *Id.* at 8 (arguing that, to hold otherwise would "place a premium on an employer's failure to keep proper records in conformity with his statutory duty").  Instead, Plaintiffs allege that they are only required to show that they performed work for which they were  improperly compensated and to produce evidence from which the amount and extent of the work they performed could reasonably and justly be inferred.  *Id.*  Plaintiffs allege

that they have met this burden, and they request a hearing on the issue damages, including the amount of liquidated damages, interest, attorneys' fees, and costs. *Id.* at 15. Alternatively, Plaintiffs request that the Court order Dynasty to calculate the number of overtime hours worked by each Plaintiff and to pay each Plaintiff said amount, along with liquidated damages, interest, attorneys' fees and costs. *Id.*

Dynasty responds that Opt-in Plaintiffs' claims are time-barred under both the two-year and the longer, three-year limitations period which applies to willful FLSA violations. Def.'s Resp. 4-5. Dynasty further argues that Plaintiffs have failed to establish that no genuine issues of material fact exist with respect to their claim. *Id.* at 6. As noted above, Dynasty argues that the Declarations of Ralph Armendáriz and Rubio are inadmissible; however, even if the challenged evidence were admissible, Dynasty contends that the evidence only indicates that one employee, César Torres, was denied overtime wages. *Id.* at 3-4, 6. Dynasty states that "Plaintiffs' attempt to impute global liability based upon evidence pertaining to one individual falls short of meeting their summary judgment burden." *Id.* Further, Dynasty alleges that there exist genuine issues of material fact as to whether César Torres was denied overtime wages. *Id.* at 6-7 (citing the deposition of Ricardo Armendáriz, which indicates that "[César] Torres may have been compensated for his overtime when he received *two* paychecks for 80 hours of work during the same pay period").

Second, Dynasty argues that it is not responsible for Plaintiffs' failure to meet their burden of proof. *Id.* Dynasty claims to have "provided all relevant records to responsive [sic] to Original Plaintiffs' claims in its possession." *Id.* at 8. It notes that "an employer is only required to preserve payroll records for a period of three years and time sheets for a period of two years," and

that its failure to produce every relevant time sheet in the instant case "does not justify a finding of liability for FLSA violations." *Id.*

Third, Dynasty argues that genuine issues of fact exist as to whether it acted wilfully in failing to compensate Plaintiffs for hours worked in excess of forty hours per week. *Id.* If Plaintiffs fail to show that Dynasty acted willfully, then the two-year statute of limitations applies to their claim, and, according to Dynasty, their claim is time-barred. *Id.* Dynasty contends that its alleged wilfulness cannot be decided as a matter of law, and that Plaintiffs' motion for summary judgment on the issue of liability should be denied.

According to Plaintiffs, Dynasty's concession that it "may owe some overtime wages to some employees for certain weeks," coupled with the evidence that Plaintiffs have provided in the form of time sheets, declarations and affidavits, entitles them to judgment as a matter of law. Pls.' Reply 4 (citing Def.'s Resp. 5). Further, Plaintiffs reject Dynasty's assertion that their claim is untimely. *Id.* According to Plaintiffs, were the Court to apply the two-year statute of limitations applicable to non-willful violations, their claim would still be timely. *Id.* Plaintiffs argue that, because Ralph Armendáriz worked as a foreman until at least March 19, 2006, "he would have [had] insulators . . . performing insulation work during this time." *Id.* at 5. Plaintiffs contend that Dynasty was clearly willful in its failure to pay overtime wages, and that their evidence, including Ricardo Armendáriz's deposition and declarations by Ralph Armendáriz and other employees, establishes Dynasty's willfulness as a matter of law. *Id.*

The Fair Labor Standards Act ("FLSA") prohibits employers from employing a person

who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless

such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

"An action to recover . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Id.* § 216(b).

"An employee bringing an action pursuant to the FLSA, based on unpaid overtime compensation, must first demonstrate that [he or] she has performed work for which [he or] she alleges [he or] she was not compensated." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005). The employee must also must prove that he or she was employed during the time for which the overtime compensation is sought. *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995). This "requires a showing that the employer had either actual or constructive knowledge that [the employee] was working overtime." *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 F. App'x 448, 455 (5th Cir. 2009) (citing *Newton*, 47 F.3d at 748). "Constructive knowledge exists if[,] by 'exercising reasonable diligence[,]' an employer would become aware that an employee is working overtime." *Id.* (citing *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 827 (5th Cir. 1973)).

However, the Supreme Court has noted that "[t]he remedial nature of [the FLSA] statute and the great public policy which it embodies . . . militate against making [this] burden an impossible hurdle" for employees. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), *superseded by statute on other grounds as recognized in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972). Because the employer, and not the employee, is in the best position to keep accurate employment records for each of its employees, once an employee has

-13-

proved that he or she has performed work for which he or she was not compensated, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88.  Employers are required to

> make, keep, and preserve such records of the persons employed by [them] and of the wages, hours, and other conditions and practices of employment maintained by [them], and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as [he or she] shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

29 U.S.C. § 211(c).

An employer's failure to come forward with such evidence permits a court to award approximate damages to the employee.  *Anderson*, 328 U.S. at 688.

> The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had [it] kept records in accordance with the requirements of . . . the Act.  And even where the lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances.

*Id.*

An employer must maintain and preserve records for each employee to whom the minimum wage and overtime provisions of the FLSA applies, including "[h]ours worked each workday and total hours worked each workweek,"[2] "[t]otal premium pay for overtime hours," the "[t]otal wages paid each pay period," and the "[d]ate of payment and the pay period covered by payment," along with "[r]ecords of retroactive payment of wages."  29 C.F.R. §§ 516.2(a)(7), (9),

---

[2]           "[F]or purposes of this section, a 'workday' is any fixed period of 24 consecutive hours and a 'workweek' is any fixed and regularly recurring period of 7 consecutive workdays)."  29 C.F.R. § 516.2(7).

(11)-(12).  Retroactive payments must be recorded and preserved as an entry on the pay records,

including "the amount of such payment to each employee, the period covered by such payment,

and the date of payment."  *Id.* § 516.2(b)(1).  In addition, an employer must

> [p]repare a report of each such payment on a receipt form provided by or
> authorized by the Wage and Hour Division, and (i) preserve a copy as part of the
> records, (ii) deliver a copy to the employee, and (iii) file the original, as evidence
> of payment by the employer and receipt by the employee, with the Administrator or
> an authorized representative within 10 days after payment is made.

*Id.* § 516.2(b)(2).

An employer must preserve payroll records for at least three years.  *Id.* § 516.5(a).  Time sheets

must be preserved for at least two years.  *Id.* § 516.6(a)(1).

As evidence for their claim, Plaintiffs have submitted Ralph Armendáriz's Declaration and

Ricardo Armendáriz's Affidavit, along with evidence, in the form of time sheets and paychecks

for César Torres, which indicates that César Torres worked overtime hours which were not

accounted for in his respective paychecks.  Pls.' Mot. 5; Pls.' Mot Exs. 1-8.  Because Plaintiffs

have put forth initial evidence that they worked hours for which they were not compensated, the

burden shifts to Dynasty to "come forward with evidence of the precise amount of work

performed or with evidence to negative the reasonableness of the inference to be drawn from the

employee's evidence."  *See Anderson*, 328 U.S. at 686-87.  Although Dynasty concedes that it

"may owe some overtime wages to some employees for certain weeks," it also points to Ricardo

Armendáriz's Deposition as evidence that it did not fail to compensate its employees.  *See* Def.'s

Resp. 5-6 (citing Pls.' Mot. Ex. 2 ("Ricardo Armendáriz Dep.")).  Dynasty contends that César

Torres "may have been compensated for his overtime when he received *two* paychecks for 80

-15-

hours of work during the same pay period."[3]  *Id.* at 6.  Dynasty also notes that the hours listed on

Plaintiffs' time sheets may not be indicative of the total number of hours that they worked.  *Id.* at

6-7.  Indeed, the Portal-to-Portal Act precludes employees from recovering wages for time spent

"traveling to and from the actual place of performance of the principal activity or activities which

such employee is employed to perform" or time spent engaged in "activities which are preliminary

to or postliminary to said principal activity or activities."  29 U.S.C. § 254(a)(1).  Lastly, Dynasty

contends that it compensates its employees through the payment of a per diem amount and that

these payments may account for the overtime compensation allegedly owed to Plaintiffs.  Def.'s

Resp. 7.

     Although Plaintiffs have put forth evidence of uncompensated overtime, Dynasty has

come forward with evidence, in the form of Ricardo Armendáriz's deposition testimony, that

tends to negate the inference drawn from Plaintiffs' evidence.  *See generally* Ricardo Armendáriz

Dep.  Although Plaintiffs may argue that Ricardo Armendáriz, as owner and Vice President of

Dynasty,  is an unreliable source of evidence, credibility determinations are within the province of

the factfinder.  *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the

evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a

judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict.").

For this reason, summary judgment on the issue of liability is inappropriate.

     Dynasty also argues that "Plaintiffs' attempt to impute global liability based upon

---

[3]       As noted above, retroactive payments require specific documentation which Dynasty has failed to provide.  *See* 29 C.F.R. §§ 516.2(b)(1)-(2).  However, its failure to provide such evidence does not negate the fact that Dynasty has come forward with some evidence to negative Plaintiffs' claims.

evidence pertaining to one individual falls short of meeting their summary judgment burden." Def.'s Resp. 6.  However, such a "global imputation" goes to the issue of damages and not to liability.  *See Moreau v. Klevenhagen*, 956 F.2d 516, 523 (5th Cir. 1992) (holding that the question of whether any employees were actually deprived of overtime compensation because of employer's no overtime policy, in violation of the FLSA, "should have been addressed only at the damages stage of the proceedings."); *see also Maynor v. Dow Chem. Co.*, --- F. Supp. 2d ----, 2009 WL 4280837, at *33 n.14 (S.D. Tex. 2009) (holding that the FLSA does not require a showing of causation and that, although an employer is permitted to contest each individual's damages in a class action, bifurcation allows it to do so).  Thus, alleged evidentiary deficiencies which pertain to the amount of damages owed is an issue to be determined at the damages stage of proceedings.

Plaintiffs also contend that they should be granted summary judgment on the issue of willfulness.  Pls.' Mot. 9-14.  As evidence of Dynasty's alleged willfulness, Plaintiffs point to Ralph Armendáriz's Declaration, which states that he informed Ricardo Armendáriz that Plaintiffs were owed overtime wages, but that, instead of paying these wages, Ricardo Armendáriz claimed that he would open a bank account on behalf of his employees.  *Id.* at 9-10.

Employees bear the burden of proving that an employer acted willfully.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988) (defining a "willful" violation as one that the employer knew of or showed reckless disregard for whether its conduct was prohibited). However, willfulness is generally a question of fact, and, as such, once a plaintiff meets the threshold burden of introducing evidence of an employer's willfulness, summary judgment on the issue is generally inappropriate.  *See Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana State*

-17-

*Univ.*, 579 F.3d 546, 552 (5th Cir. 2009); *Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 824 (5th Cir. 1993). The impropriety of summary judgment is further underscored by the evidence that Plaintiffs provide in support of their Motion. Plaintiffs' evidence requires a determination of the credibility of their witnesses, and, as noted previously, such a determination should be reserved for the finder of fact. *See Ikossi-Anastasiou*, 579 F.3d at 552 (citing *Orthopedic & Sports Injury Clinic v. Wang*, 922 F.2d 220, 223 (5th Cir. 1991)) ("In granting a motion for summary judgment, the district court is not to weigh the evidence or make credibility choices."). Genuine issues of material fact exist as to whether Dynasty failed to compensate Plaintiffs for overtime work, and the issue of willfulness, too, is inappropriate for resolution at this stage of the proceedings. Because the Court considers the question of willfulness to be a jury issue, it assumes without deciding for summary judgment purposes that the three-year statute of limitations period applies.

> **D.    Defendant's Motion for Partial Summary Judgment**

For its part, Dynasty motions the Court to dismiss all claims filed by Opt-in Plaintiffs as time-barred. *Id.* at 1. Dynasty alleges that the Southwest Cheese Project ended in December 2005. *Id.* Even assuming that the longer, three-year statute of limitations applies, Dynasty claims that it is entitled to summary judgment on claims asserted by Opt-in Plaintiffs because not one Opt-in Plaintiff filed his claim within three years from the date of his last paycheck. *Id.*

As noted above, Plaintiffs have submitted evidence indicating that the foreman on the Southwest Cheese Project, Ralph Armendáriz, worked on the project until at least March 19, 2006. Pls.' Resp. Exs. 5-12. Plaintiffs claim that it is therefore possible that Ralph Armendáriz and his employees (the Opt-in Plaintiffs) worked beyond March 19, 2006, making their claims timely. *Id.* at 3. Because Dynasty "has not been forthcoming with the relevant timesheets and

-18-

records," Plaintiffs contend that any uncertainties should be resolved in their favor. *Id.* Should the Court determine that Opt-in Plaintiffs' claims are time-barred, Plaintiffs request that 1) the applicable statute of limitations be equitably tolled; and/or 2) Dynasty be equitably estopped from asserting its statute of limitations defense. *Id.*

Dynasty defends that, although Ralph Armendáriz performed "clean up" work for the Southwest Cheese Project after the project's end in December 2005, "no Dynasty employee worked on any *installation of insulation* on that project" after that time. Def.'s Reply 1. Because the certified class only includes individuals who "fabricated insulation materials or performed insulation or insulating work" on the Southwest Cheese Project, Dynasty contends that the statute of limitations has run on Opt-in Plaintiffs' claims. *Id.* (citing September 2008 Order).

Second, Dynasty argues that Plaintiffs are not entitled to equitable tolling of their claims because "ignorance of the law alone is not sufficient to warrant equitable tolling." *Id.* at 3 (citing *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)). Further, "given their alleged inquiries to Dynasty about overtime wages during their employment," Dynasty asserts that Opt-in Plaintiffs were clearly knowledgeable about their rights under the FLSA. *Id.* at 4. Lastly, Dynasty claims that it should not be equitably estopped from asserting its statute of limitations defense because Plaintiffs have failed to establish that Dynasty prevented them from filing their claims in a timely manner. *Id.* at 5. Any alleged fears of retaliatory firing, Dynasty argues, necessarily ended with the project's end in December 2005, when Opt-in Plaintiffs were terminated. *Id.* at 6. In addition, Dynasty notes that, although Plaintiffs reference Ricardo Armendáriz's alleged promises to place overtime wages into a bank account for his employees, Plaintiffs neither claim that they were aware of this statement nor that they reasonably relied on it when deciding not to file timely wage

-19-

claims against Dynasty.  *Id.*

Plaintiffs allege that Opt-in Plaintiffs' Notices of Consent were filed in a timely manner.

Pls.' Resp. 4-5.  In the alternative, they argue that their claims merit equitable tolling or equitable

estoppel.  *Id.* at 6-8.

### 1.        Statute of Limitations

An action for overtime compensation under the FLSA must be commenced within two

years, unless the employer acted willfully in failing to compensate its employees.  29 U.S.C. §

255(a).  In the case of a willful violation, an employee has three years to bring suit.  *Id.*  As noted

above, employees bear the burden of proving that an employer acted willfully.  *McLaughlin*, 486

U.S. at 135.  "Because willfulness is a question of fact, summary judgment in favor of the

employer is inappropriate if the plaintiff has introduced evidence sufficient to support a finding of

willfulness."  *Ikossi-Anastasiou*, 579 F.3d at 552.

Plaintiffs have submitted evidence that Ricardo Armendáriz, Vice President and owner of

Dynasty, knew that his employees were working overtime because Ralph Armendáriz, the

employee in charge of recording employees' work and hours, "reported to [Ricardo Armendáriz]

that employees were working more than 40 hours."  Ralph Armendáriz Decl. ¶ 4.  According to

Ralph Armendáriz, he "sent the timesheets that contained employees' overtime hours for work

they performed at the Southwest Cheese Project to Rick (Ricardo) Armendáriz."  *Id.* ¶ 2.  Ralph

Armendáriz also declared that he spoke with Ricardo Armendáriz on several occasions about

employees' overtime compensation and that Ricardo Armendáriz told him that "instead of paying

employees their overtime wages, he was going to take employees' overtime wages . . . and open a

bank account" for them.  *Id.* ¶ 6.  Ralph Armendáriz's Declaration tends to show that Ricardo

Armendáriz had notice that his employees were working overtime, and that he failed to compensate them for this time. This evidence is sufficient to support a finding that Dynasty knew or showed reckless disregard for whether its conduct violated the FLSA, and summary judgment in Dynasty's favor on the issue of willfulness is improper. *See Ikossi-Anastasiou*, 579 F.3d at 552.

Even if the Court were to apply the longer, three-year statute of limitations to Plaintiffs' claims, Dynasty argues that Opt-in Plaintiffs' claims are untimely. Def.'s Mot. 3 ("[T]he Opt-in Plaintiffs failed to file their consents within three years of the accrual of their cause of action."). Because "no wages were earned on the project after [the project's end in] December 2005" and "no Opt-in Plaintiff filed his consent to opt-in earlier than March 24, 2009," Dynasty argues that it is entitled to judgment as a matter of law on Opt-in Plaintiffs' claims. *Id.* at 3-4.

"[I]n a[n] FLSA collective action, the statute of limitations for a named plaintiff runs from the date that the plaintiff files the complaint, while the limitations period for an opt-in plaintiff runs from the opt-in date." *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916-17 (5th Cir. 2008) (citing *Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1130 n.5 (5th Cir. 1983)). "A separate cause of action for overtime compensation [under § 255(a)] accrues at each regular payday immediately following the work period during which the services were rendered and for which the overtime compensation is claimed." *See Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1050 (5th Cir. 1973) (quotation marks omitted).

Plaintiffs claim that Dynasty "has not been forthcoming with timesheets, paychecks, and records concerning the work at the Southwest Cheese project." Pls.' Resp. 5. As noted earlier, Dynasty had an obligation to preserve payroll records for at least three years and to preserve time

sheets for at least two years. *See* 29 C.F.R. § 516.6(a)-(a)(1). However, Plaintiffs must first introduce evidence that they worked during the applicable time period. As evidence of such work, Plaintiffs have provided Ralph Armendáriz's payroll records, which indicate that he worked on the Southwest Cheese Project until at least March 19, 2006. Pls.' Resp. Ex. 12. Because the limitations period begins to run at each payday immediately following the work period, the relevant date for statute of limitations purposes is the date on which Ralph Armendáriz was paid for this work. *See Hodgson*, 475 F.2d at 1050. Evidence provided by Plaintiffs indicates that employees were generally paid between three to five days following their last reported day of work. *See* Pls.' Mot. Ex. 1-A–1-M. However, one of César Torres's pay stubs indicates that he was paid for his work as late as one week after his final work day. Pls.' Mot. Ex. 1-l. Thus, resolving the issue in favor of the nonmovants, Ralph Armendáriz may have been paid as late as March 26, 2006.[4] Had Opt-in Plaintiffs also been employed during this period, those Opt-in Plaintiffs who filed their claims prior to March 26, 2009, may have submitted timely claims. Because this period is within the three-year period for which Dynasty is responsible for maintaining payroll records, and Plaintiffs have put forth some evidence that Opt-in Plaintiffs performed overtime work during this time, Dynasty has the burden to produce evidence negating this inference or to provide the Court with payroll records which establish the number of hours actually worked. *See Anderson*, 328 U.S. at 687-88.

Dynasty argues that the work performed by Ralph Armendáriz after the project's end in

---

[4]       The Court notes that it is possible that employees were paid later than five days following their last day of work; however, as Plaintiffs do not provide any evidence that this occurred, it is beyond the province of the Court to address this contingency.

December 2005 was simply "clean up work which included demobilizing the equipment and conducting an inventory of the left over [sic] materials." Def.'s Reply 3. Because the certified class is limited to employees performing insulation work, and Ralph Armendáriz's own testimony confirms that the project ended in December 2005, Dynasty argues that Opt-in Plaintiffs' claims are barred. *Id.* The evidence before the Court shows that there exist genuine issues of material fact regarding the precise duration of the Southwest Cheese project, along with the nature of the work performed after December 2005. For this reason, Dynasty's Motion for Partial Summary Judgment is denied insofar as it applies to the claims of Opt-in Plaintiffs who filed their Notices of Consent prior to March 26, 2009.

Although Plaintiffs contend that it is possible that Opt-in Plaintiffs worked beyond March 19, 2006, they provide no evidence, in the form of affidavits or otherwise, to support this claim. Pls.' Resp. 5. Plaintiffs' claim that "but for possibly a few days, all Opt-in Plaintiffs' claims would be timely"; however, those "few days" are precisely what bar their claim. *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants . . . . 'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'") (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)); *see also* Pls.' Resp. 4-5; Pls.' Resp. Ex. 6. Plaintiffs' assertion that employees "possibly [worked] beyond this date" is speculative at best. *See* Pls.' Resp. 3. For this reason, Opt-in Plaintiffs who filed their Notices of Consent on or after March 26, 2009, are barred from asserting their claims by the applicable statute of limitations. Unless the Court finds that equitable tolling is warranted, their claims ought to be

denied as a matter of law.

###### 2.    Equitable Tolling

Plaintiffs argue that, even if some Opt-in Plaintiffs' claims are barred by the statute of limitations,[5] equitable tolling is warranted in the instant case. Pls.' Resp. 6. Plaintiffs claim that equitable tolling is appropriate where employees were "excusably unaware" of the existence of their claims or where their injuries were "inherently unknowable." Pls.' Resp. 6.

As noted in this Court's July 2009 Order, "[t]he doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (quoting *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998)); July 2009 Order 14. "Equitable tolling of the statute of limitations is based on the principle that no one 'may take advantage of his own wrong.'" *Coke v. Gen. Adjustment Bureau*, 640 F.2d 584, 596 (5th Cir. 1981) (quoting *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232 (1959)). While equitable tolling and equitable estoppel may both involve concealment by the employer, "[e]quitable tolling focuses on the employee's ignorance, [and] not on any possible misconduct by the employer." *Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876, 878 (5th Cir. 1991). Equitable tolling applies only in "rare and exceptional circumstances," *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002) (quoting *Davis*, 158 F.3d at 811), and it is available only when a plaintiff diligently pursues his or her rights. *Caldwell v. Dretke*, 429 F.3d 521, 530 n.23 (5th Cir. 2005); *see also Pacheco v. Rice*, 966 F.2d 904, 906-07

---

[5]     Opt-in Plaintiffs who require equitable tolling of the statute of limitations in order to proceed with their claims are Manuel Hernández-Carrasco, José J. Rubio, Abel G. Romero, Antonio Gabaldón, Felipe Piña, Ralph Armendáriz and Hiram Hinojoza.

(5th Cir. 1992) (Under equitable tolling, the statute of limitations is suspended "when, despite all due diligence, a plaintiff is unable to discover essential information bearing on the existence of his claim."). "The party who invokes equitable tolling bears the burden of proof." *Teemac*, 298 F.3d at 457 (citing *Wilson v. Sec'y, Dep't of Veterans Affairs*, 65 F.3d 402, 362 (5th Cir. 1995)). Provided that the relevant underlying facts are undisputed, a district court may grant or deny equitable tolling as a matter of law. *See Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 358 (5th Cir. 2006); *Niehoff v. Maynard*, 299 F.3d 41, 47 (1st Cir. 2002).

In support of their argument for equitable tolling, Plaintiffs have submitted signed declarations for Opt-in Plaintiffs Rubio, Piña and Romero. Rubio Decl.; Pls.' Resp. Ex. 3 ("Piña Decl."), Pls.' Resp. Ex. 4 ("Romero Decl."). All three Opt-in Plaintiffs acknowledge that they were aware that they were not being compensated for hours worked in excess of forty hours per week, as evidenced by their alleged inquiries to their supervisors regarding these wages, but that they feared that further action on their parts would result in the loss of their jobs. Rubio Decl. ¶¶ 4-5; Piña Decl. ¶¶ 3-4; Romero Decl. ¶¶ 4-5. Given the evidence provided, it does not appear as though Opt-in Plaintiffs were "excusably unaware"of the existence of their claims or that their injuries were "inherently unknowable." Even if they were unaware of the existence of legal means for recovering their wages, this would not necessarily warrant the equitable tolling of their claims, as ignorance of the law does not justify equitable tolling. *See Baldwin County Welcome Ctr.*, 466 U.S. at 152; *Teemac*, 298 F.3d at 457. In any case, all three Opt-in Plaintiffs knew that they were entitled to overtime compensation but failed to diligently pursue their rights. Thus, they have failed to meet their burden of establishing the propriety of equitable tolling, and the Court declines to toll the limitations period on these grounds.

Opt-in Plaintiffs also appear to claim that their causes of action were intentionally concealed from them because Dynasty failed to post notices of the FLSA's wage provisions.  Pls.' Resp. 9-10; *see also Rhodes*, 927 F.3d at 878 (characterizing a claim for tolling the statute of limitations because of an employer's failure to post required information regarding employees' rights as equitable tolling rather than equitable estoppel).  Indeed, Dynasty was required to "post and keep posted a notice explaining the [FLSA], as prescribed by the Wage and Hour Division, in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy."  *See* 29 C.F.R. § 516.4.  In the context of ADEA claims, the Fifth Circuit has held that an employer's failure to post a required notice setting forth employees' rights may trigger equitable tolling of the statute of limitations.  *See Clark v. Resistoflex Co.*, 954 F.2d 762, 767 (5th Cir. 1988).  However, such tolling would only occur until such time as the employee secured counsel or acquired actual knowledge of his or her rights.  *Id.* at 767.

Although Plaintiffs cite *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 461 (2d Cir. 1974), as support for their assertion that equitable tolling is appropriate when a plaintiff is unaware of his or her cause of action, Pls.' Resp. 6, the case clearly states that "the statute does not begin to run until 'the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice.'"  *See Grinnell Corp.*, 495 F.2d at 461 (citing *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985)).  Here, Opt-in Plaintiffs appear to have had actual knowledge of their rights to overtime compensation, as evidenced by their requests for such compensation.  *See* Rubio Decl. ¶ 4; Piña Decl. ¶ 4; Romero Decl. ¶ 4.  Opt-in Plaintiffs "knew that they were not receiving any overtime

-26-

pay – and that knowledge constituted knowledge of facts triggering the accrual of a cause of action." *See Archer v. Sullivan County, Tenn.*, Nos. 95-5214, 95-5215, 1997 WL 720406, at *4 (6th Cir. Nov. 14, 1997). Thus, even though Dynasty may have failed to post signs informing them of their rights, Dynasty's failure did not deprive Plaintiffs of the knowledge that they were owed such compensation. It is not necessary for Plaintiffs to know that a cause of action exists, so long as they knew or should have known the facts that comprise their FLSA claim. *See Cerbone*, 768 F.2d at 48 (noting that equitable tolling was designed to remedy situations where a defendant "made it impossible for a plaintiff to discover the facts underlying his cause of action until after the limitations period had expired."). Even if they were not aware that they had the right to sue, ignorance of the law alone is insufficient to justify equitable tolling. *See Whitt v. Stephens County*, 529 F.3d 278, 283 (5th Cir. 2008); *see also Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991) ("The statute itself gave the plaintiffs constructive notice of the fact that [their employer] was violating their rights under the FLSA and of the deadline for filing suit."); *see also Archer*, 1997 WL 720406, at *4 (finding that an employer's failure to post required Department of Labor notice did not warrant equitable tolling of the statute of limitations). Because Opt-in Plaintiffs knew that they had worked in excess of forty hours per week and that they were entitled to overtime compensation, they may not invoke equitable tolling on a theory that Opt-in Plaintiffs were "excusably unaware" of their claims.

### 3. Equitable Estoppel

Lastly, Plaintiffs argue that Dynasty should be equitably estopped from asserting its statute of limitations defense because Dynasty allegedly concealed and misrepresented facts that prevented Opt-in Plaintiffs from pursuing their claims in a timely manner. Pls.' Resp. 6-9.

The doctrine of equitable estoppel seeks to prevent those who benefit from a transaction from reaping its benefits while avoiding its associated obligations. *See Long v. Turner*, 134 F.3d 312, 318 (5th Cir. 1998).  Under equitable estoppel, "an employer is estopped from asserting the filing period if the employer misrepresented or concealed 'facts necessary to support [the applicable claim].'"  *Rhodes*, 927 F.2d at 878-79 (quoting *Pruet Prod. Co. v. Ayles*, 784 F.2d 1275, 1280 (5th Cir. 1986)).  "[T]he party claiming the estoppel must have relied on its adversary's conduct in such a manner as to change [its] position for the worse.  And . . . that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading."  *Minard*, 447 F.3d at 358 (internal citations and quotation marks omitted).  Like equitable tolling, the propriety of equitable estoppel may be determined on a motion for summary judgment, provided that there are no material factual issues that must first be resolved.  *See Chavez v. Carranza*, 559 F.3d 486, 494 (6th Cir. 2009).

Opt-in Plaintiffs Romero, Piña, Rubio and Ralph Armendáriz claim that they knew that they were not being compensated for their overtime and that their attempts to recover their lawful wages were met with little or no success.  Rubio Decl. ¶ 4; Piña Decl. ¶ 4; Romero Decl. ¶ 4; Ralph Armendáriz Decl. ¶¶ 3-4.  Rubio claims that he was told that Dynasty did not pay overtime wages.  Romero Decl. ¶ 4.  Romero was told that his supervisor would settle the matter with Dynasty's owner, but his supervisor "never said anything else to [him] about this matter."  *Id.* ¶ 4.  According to Plaintiffs, "[t]hese statements and actions led Mr. Rubio, Mr. Rodríguez, Mr. Romero and the other Opt-in plaintiffs to believe that they were not entitled to overtime wages or that Dynasty was not obligated to pay overtime wages."  Pls.' Resp. 7-8.  These Declarations are

evidence that Dynasty concealed facts which would have supported Plaintiffs' claims.  Thus, the applicability of equitable estoppel turns on whether Opt-in Plaintiffs  relied on Dynasty's alleged misrepresentations and, if so, whether such reliance was reasonable.  *See Minard*, 447 F.3d at 358.

It is clear from Rubio's Declaration that he did not rely on Ricardo Armendáriz's statement that Dynasty did not pay overtime wages because "[a]fter talking with Ric[ardo] Armendariz, [he] went to talk to the Dynasty person in charge of the Pecos project" to discuss that same issue.  Rubio Decl. ¶ 4.  Although Romero may have relied on Ralph Armendáriz's statement that he would settle the matter, it strikes the Court as unreasonable for Romero to continue to rely on this single assurance for three years.  The reasonableness of Opt-in Plaintiffs' alleged reliance is even more suspect with respect to Ralph Armendáriz.  In his Declaration, Ralph Armendáriz claims that Dynasty did, at times, pay him the overtime compensation he was owed.  Ralph Armendáriz Decl. ¶ 4.  Thus, it is unlikely that he believed that he was not entitled to such pay, or, if he did, that such a belief was reasonable.

Although the evidence provided tends to show that Dynasty was aware of its obligation to pay overtime wages to its employees, such a contingency is built into the statute, allowing plaintiffs an additional year to file claims where an employer's violation was "willful."  *See* 29 U.S.C. § 255(a).  Given that this scenario was contemplated by Congress when drafting the statute, it seems fair to assume that an intentional violation alone cannot justify equitable estoppel. Plaintiffs have failed to show that they reasonably relied on Dynasty's claims that it was not obligated to pay overtime wages, and Dynasty's statute of limitations defense may not be equitably estopped on this ground.

Plaintiffs also argue that Dynasty's statute of limitations defense should be equitably

estopped because of Ricardo Armendáriz's "claims that he had deposited employees' overtime

wages in bank accounts" on their behalf.  Pls.' Resp. 8; Ralph Armendáriz Decl. ¶ 3.  However,

Plaintiffs provide no evidence that any Opt-in Plaintiff, other than Ralph Armendáriz, was aware

of Ricardo Armendáriz's alleged claim, much less that he reasonably relied on this claim to his

detriment.  In their Declarations, several Opt-in Plaintiffs recall speaking with Ralph Armendáriz

regarding their overtime compensation, but not one alleges that he was told that these wages were

being placed into a bank account on his behalf.  Romero Decl. ¶ 4; Piña Decl. ¶ 4.  Romero claims

that Ralph Armendáriz told him that he would settle the matter, but he further states that Ralph

Armendáriz never revisited the issue with him.  Romero Decl. ¶ 4.  Piña claims that he was

discharged after his inquiries, a fact that refutes the claim that he relied on Ricardo Armendáriz's

promises in deciding not to pursue his claim.  *See* Piña Decl. ¶ 4.  The only Opt-in Plaintiff who

indicates that he was aware of this alleged claim is Ralph Armendáriz.  *See* Ralph Armendáriz

Decl. ¶ 3.  However, notably absent from Ralph Armendáriz's Declaration is any evidence that he

believed that Ricardo Armendáriz's claims about the bank account were genuine or that he relied

on them in deciding not to pursue his claim within the applicable limitations period.

The strongest argument that Opt-in Plaintiffs have presented in support of their equitable

estoppel argument is that they feared that further attempts to recover their overtime wages would

result in the loss of their jobs.[6]  Rubio Decl. ¶¶ 4-5; Romero Decl. ¶¶ 4-5.  Specifically, Rubio

alleges that he was told that, if he continued to ask about his wages, he could go work elsewhere.

---

[6]        This claim does not apply to Ralph Armendáriz, who, unlike Rubio and Romero, does not express any fear of retaliation were he to attempt to recover unpaid wages owed to him. Indeed, as noted above, Ralph Armendáriz states that Dynasty would pay him overtime compensation when he insisted that it do so.  Ralph Armendáriz Decl. ¶ 4.

Pls.' Resp. 7-8.  However, aside from stating their fears, Opt-in Plaintiffs offer little evidence that

such fears were substantiated.  Romero Decl. ¶ 5 ("I was afraid of being fired.  I needed that

job.").  Rubio claims that he approached the Dynasty employee in charge of the Pecos project

where he worked.  Rubio Decl. ¶ 5.  He claims that the employee told him that "if [he] did not like

the conditions in Pecos, that [he] should go to work in the Southwest Cheese project."[7]  *Id.*  He

further claims that he was afraid that he would be fired from the job were he to continue to inquire

about overtime compensation.  *Id.*

      Although the Court sympathizes with Opt-in Plaintiffs' fears of being fired, were such

fears, alone, a legitimate basis for equitable estoppel, then all employees would be able to toll

their FLSA claims during the pendency of their employment.  *See Harris v. Freedom of Info. Unit*

*Drug Enforcement Admin.*, No. 3:06-CV-0176-R, 2006 WL 3342598, at *6 (N.D. Tex. Nov. 17,

2006) (finding fear of retribution insufficient to toll statute of limitations where plaintiff's

"conclusory assumption" contained no support in the record).  Such a result would render the

statute of limitations of no import.

      The most egregious evidence that Plaintiffs provide is the Declaration by Piña, in which

Piña claims that he was fired without cause shortly after inquiring about overtime wages.  *See*

Piña Decl. ¶ 4.  However, even this evidence does not warrant equitable estoppel of Dynasty's

---

[7]    Rubio states that, during his work for the Southwest Cheese
Project, he also worked for Dynasty on a project in Pecos,
Texas.  Rubio Decl. ¶ 5.  It was while he was working in Pecos
that he was told that if he did not like the working conditions
there, he could return to work in the Southwest Cheese Project.
*Id.*  Rubio does not provide evidence that the job in Pecos was
superior to his position with the Southwest Cheese Project or
that returning to the latter would have any negative
consequences.  Thus, the statement does not appear to be a
threat of retaliatory action that would substantiate his fears of
being terminated.

statute of limitations defense.  First, Plaintiffs provide no evidence that other employees were aware of the reason for Piña's discharge or that they had reason to fear similar reprisals.  Second, Piña claims that some of his coworkers accompanied him when he spoke with Ralph Armendáriz about overtime compensation, but Plaintiffs provide no evidence that any of these employees were similarly discharged.  Third, and most importantly, even if Opt-in Plaintiffs did have good cause to fear termination, such concerns necessarily departed once their work with the Southwest Cheese Project ended.  Their fears of being terminated do not explain why they failed to pursue their claims within three years of the project's end.

Because Plaintiffs have failed to provide evidence that Opt-in Plaintiffs Manuel Hernández-Carrasco, José J. Rubio, Abel G. Romero, Antonio Gabaldón, Filipe Piña, Ralph Armendáriz and Hiram Hinojoza filed their claims within the three-year limitations period for willful FLSA violations, and they have failed to present genuine issues of material fact as to whether equitable tolling or equitable estoppel is warranted, Dynasty's Motion for Partial Summary Judgment shall be **GRANTED** insofar as it applies to Opt-in Plaintiffs who filed their Notices of Consent on or after March 26, 2009.

## III.    CONCLUSION

For the foregoing reasons, Dynasty's Motion to Strike Plaintiffs' Summary Judgment Evidence (Doc. No. 67) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 64) is **DENIED**.

**IT IS FURTHER ORDERED** that Dynasty's Motion for Partial Summary Judgment (Doc. No. 65) shall be **GRANTED** in part and **DENIED** in part.  It shall be **GRANTED** with

respect to Opt-in Plaintiffs Manuel Hernández-Carrasco, José J. Rubio, Abel G. Romero, Antonio Gabaldón, Filipe Piña, Ralph Armendáriz and Hiram Hinojoza.  Claims submitted by Opt-in Plaintiffs Manuel Hernández-Carrasco, José J. Rubio, Abel G. Romero, Antonio Gabaldón, Filipe Piña, Ralph Armendáriz and Hiram Hinojoza are hereby **DISMISSED**.  It shall be **DENIED** with respect to all other Plaintiffs.

      **SO ORDERED**.

      **SIGNED** on this 3rd day of March, 2010.


                        _____

                        KATHLEEN CARDONE
                        UNITED STATES DISTRICT JUDGE